```
 1                    UNITED STATES DISTRICT COURT

 2                WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3   _____
                                   )
 4                                 )
     UNITED STATES OF AMERICA,     )  CR17-135-TSZ
 5                                 )
                    Plaintiff,     )  SEATTLE, WASHINGTON
 6                                 )
     v.                            )  January 25, 2018
 7   YAOAN HE,                     )
                                   )  SENTENCING HEARING
 8                  Defendant.     )
                                   )
 9   _____

10                   VERBATIM REPORT OF PROCEEDINGS
                BEFORE THE HONORABLE THOMAS S. ZILLY
11                  UNITED STATES DISTRICT JUDGE
     _____
12

13
     APPEARANCES:
14

15

16    For the Plaintiff:      Catherine Crisham
                              Assistant United States Attorney
17                            700 Stewart Street
                              Suite 5220
18                            Seattle, WA 98101

19
      For the Defendant:      Gregory Murphy
20                            Federal Public Defender's Office
                              1601 5th Avenue
21                            Suite 700
                              Westlake Center Tower
22                            Seattle, WA  98101

23    Interpreter for         Ben Tseng
      Defendant:
24

25
```

1    THE CLERK: Will counsel please come forward in the
2 He matter?
3    The court calls to order cause number 17-135Z United
4 States v. He.
5    MS. CRISHAM: Kate Crisham for the United States.
6    MR. MURPHY: Greg Murphy for the Federal Defender's
7 Office for Yaoan He.
8    THE COURT: Good afternoon. Did the defendant
9 receive a copy, and have read to him in his native language,
10 the presentence investigation report and the sentencing
11 recommendations of probation?
12    MR. MURPHY: Yes, Your Honor.
13    THE COURT: In addition, I reviewed the plea
14 agreement, the proposed judgment, the government's sentencing
15 memo, and the defendant's sentencing memo. Is there anything
16 else I should have received and reviewed?
17    MS. CRISHAM: No, Your Honor.
18    MR. MURPHY: No, Your Honor.
19    THE COURT: All right. Are there any factual
20 disputes to the facts in the presentence report, for purposes
21 of determining guideline calculations?
22    MS. CRISHAM: Not from the government, Your Honor.
23    MR. MURPHY: I don't believe so.
24    THE COURT: You have to speak up, counsel.
25    MR. MURPHY: Excuse me. I think I'm not close enough

1  to the microphone.  I don't think there are any guideline
2  disputes.
3          THE COURT:  The court adopts as facts all the facts
4  in the presentence report.  And based on those facts, I'll
5  adopt the guideline calculations.  Probation calculated that
6  would result in a guideline range of 12 to 18 months,
7  criminal history category 13, total offense level 13,
8  criminal history category 1, 12 to 18 months.  Any objection
9  to that calculation?
10         MR. MURPHY:  No, Your Honor.
11         MS. CRISHAM:  No, Your Honor.
12         THE COURT:  I'll hear from the government what the
13 appropriate sentence is.
14         MS. CRISHAM:  Thank you, Your Honor.  Along with the
15 defense, we are asking the court to sentence Mr. He to a
16 sentence of 364 days.  Mr. He was a low-level but very
17 involved member of this interstate prostitution ring.  Within
18 the last year, before the organization was dismantled, Mr. He
19 was seen by, or observed by law enforcement involved in some
20 aspect of the organization's business nearly every single
21 day.
22     Toll records and car-tracker data show him visiting a
23 number of different brothel locations nearly every night.  We
24 know from speaking with the women in these brothels that it
25 was Mr. He's job to come collect the prostitution earnings,

drop off supplies, and food and water for them.

Mr. He also assisted in posting some prostitution advertisements on Backpage.com, and he also leased several apartments in his name that were used as brothels.  Although Mr. He played an important role in the conspiracy, it also became clear during the course of the investigation that he was a lower-level member of the conspiracy than the other defendants who have been before the court.

Unlike Mr. Wu, Mr. Zhang or Mr. Thompson, Ms. Wang did not consult with Mr. He about various business decisions, or how best to run the organization.  And unlike Ms. Wang or Mr. Thompson, Mr. He did not appear to receive much in the way of financial benefits.

THE COURT:  ███████████████████████████████████████████████████████████████████████████████ ?

MS. CRISHAM:  I mentioned Ms. Wang, Your Honor, because we don't have much information about Mr. Wu's financial benefits.  And it's really just Mr. Thompson and Ms. Wang that we have the most information about.

THE COURT:  What do you know about this defendant?  He's here for sentencing.

MS. CRISHAM:  I was trying to differentiate why he had a minor role compared to the other defendants, Your Honor.

1       THE COURT: ███████████████████████████
2  ███████?
3       MS. CRISHAM:  They did, Your Honor.
4       THE COURT: ████████████████████████████
5  ████████████████████████████████████████████
6  ████████████████████████████████████████████
7       MS. CRISHAM:  I think, Your Honor, this is a sentence
8  just below Mr. He's guideline range.  It took into account
9  his minor role, which the other defendants did not receive.
10 And so for that reason I think that he would be a entitled to
11 a lower guideline range than those defendants. ████████
12 ████████████████████████████████ There really does
13 not seem to be anything that really seems to move Mr. He one
14 way or the other from that guideline range.  And we think a
15 low-end sentence is appropriate of 364 days.
16    We do think that a custodial sentence is necessary.
17       THE COURT:  This conspiracy went on for almost four
18 years.
19       MS. CRISHAM:  It did, Your Honor, yes.
20       THE COURT:  How long was this defendant involved in
21 the activities of the conspiracy?
22       MS. CRISHAM:  He was involved for some time.  I
23 believe that he came in later in the conspiracy.
24       THE COURT:  That's not helpful.
25       MS. CRISHAM:  Your Honor, we don't know the exact

1  date he became involved.  He never gave a proffer.

2          THE COURT:  So you really don't know.

3          MS. CRISHAM:  We know someone, for example Mr. Chen,

4  we know was involved in this business since at least 2014.

5  We know Mr. Wu, due to his proffer, he told us he became

6  involved in 2015, as well as Mr. Zhang.  But we don't know

7  the start date of Mr. He.

8          THE COURT:  We know that apparently in October of

9  2015 he was arrested in Pierce County, charged with promoting

10 prostitution.  Apparently those charges were dropped.  Is

11 that in any way related to the conspiracy we have here?

12         MS. CRISHAM:  We don't know that, Your Honor.  We

13 know that there were out-call dates that were organized by

14 this conspiracy.  It's our inference -- we were not involved

15 -- we were not aware of Mr. He being involved on his own.  So

16 it does seem to be something connected to this conspiracy.

17 We know he was involved in the conspiracy probably since late

18 2015, certainly throughout 2016, before he was arrested in

19 2017.

20         THE COURT:  So your recommendation is?

21         MS. CRISHAM:  A sentence of 364 days, Your Honor.

22         THE COURT:  All right.  I understand your position.

23 I'll hear from the defendant.  Counsel.

24         MR. MURPHY:  Thank you, Your Honor.  Your Honor, the

25 government noted this is a joint recommendation, and in that

1  spirit I had thought to keep my comments in mitigation brief.
2  But the court has some specific concerns, I can see, and I'll
3  try to address those.  Certainly if there are areas the court
4  wants me to address, I'd be grateful for that direction.
5      What I would say about Mr. He, and I'm aware that I'm
6  mispronouncing his name, is that Mr. He is differently
7  situated than many of the people in this case, and certainly
8  many of the people I've ever had the occasion to represent.
9  The court knows that he arrived in this country with his
10 spouse, who is present in court, with other family members to
11 support him.
12     At the time they had a young child, and a second child,
13 and she was pregnant with a second child, and they made the
14 decision to stay in the United States so they wouldn't be
15 obliged to either pay a penalty or abort the second child.
16 They now have three children.  And Mr. He has been the
17 primary provider for his small family.
18         THE COURT:  Well, he has been providing by working in
19 this prostitution conspiracy.  What else has he been doing?
20         MR. MURPHY:  Well, as the court knows -- so, he
21 didn't get off the plane and get involved in this conspiracy.
22 What happened was when he arrived in Seattle he knew a single
23 person in the United States, it was a middle school classmate
24 who was married to someone who ended up being a part of this
25 conspiracy.

What Mr. He did was sort of began doing almost anything he could with the limited resources he had.  So Mr. He was a hard worker, but didn't speak any English.  He doesn't have an advanced degree.  He was allowed to remain in the United States, because he had a pending asylum case.  But most of the time here he didn't have a work permit.

So what Mr. He did is he found work kind of in the service and cash economy.  So he would place ads offering to move furniture.  He would respond to ads asking for help.  He worked for a time at a Chinese restaurant delivering food.  He picked up Chinese nationals from the airport, because he would advertise in Chinese media.  He would -- when they were eventually able to rent a place, he rented out rooms in his place to other Chinese nationals who were coming to the university, and so forth.  He offered tours of Seattle to people who would do it.

And that work, basically his delivery work, is how he got introduced to this conspiracy, and ultimately migrated into what he ended up doing for this conspiracy.  And a lot of what the prosecutor has described, which I think is essentially accurate, is sort of was an outgrowth of work he was doing, kind of in a lot of different contexts, that ultimately he became -- ended up working primarily for his co-conspirator here, Ms. Fang Wang, who the court has already seen.

1   There are some ways in which -- I appreciate the
2   government's emphasis on Mr. He's minor role, because there
3   are a number of ways in which he is, to our mind, differently
4   situated.  So unlike some of the -- as the government pointed
5   out, he was not a confidant of the higher members of this
6   conspiracy.  They didn't consult with him.  She didn't
7   consult with him.  He was essentially grunt work.  He picked
8   up stuff and delivered stuff when instructed to.
9           THE COURT:  Well, the stuff was all related to the
10  conspiracy that was going on.  Delivering supplies.  It was
11  moving the women around.
12          MR. MURPHY:  That's right.
13          THE COURT:  Did he rent apartments as well?
14          MR. MURPHY:  Well, he did.  Once he got --
15          THE COURT:  When he was renting the apartments, he
16  knew they were going to be used for prostitution purposes; is
17  that right?
18          MR. MURPHY:  I think so, yes, Your Honor.
19          THE COURT:  There's no doubt.
20          MR. MURPHY:  I think what happened was he ended up
21  being -- he ended up getting a work permit.  Then because he
22  had documents that allowed him to rent apartments -- you
23  know, he didn't pay for the apartments, he didn't select the
24  apartments, he didn't -- but he was -- but Fang Wang would
25  give him directions.  Then he would follow those.

1  THE COURT:  So help me understand his role in the
2  apartments.  He didn't select them.  Did he go rent them?
3  MR. MURPHY:  The discovery -- at least some of the
4  times it appears that he did.  The discovery -- a lot of
5  these things are E-signed.  So what he was able to provide
6  that was valuable was a valid -- was a credit rating and a
7  valid identification.  But once the apartments were rented,
8  his participation in some cases was essentially over.  Mr. He
9  -- and I didn't mean to cut the court off.
10  THE COURT:  No.
11  MR. MURPHY:  I'm sorry.  Mr. He -- virtually the
12  entire time that he was working, he was involved in this
13  conspiracy, he also had other work.  He was working --
14  THE COURT:  So you refer to the entire time.  What
15  was that entire time?  The government doesn't seem to know.
16  Can you represent to me what period of time he was involved?
17  MR. MURPHY:  I don't know for 100 percent sure.  What
18  I can tell you is --
19  THE COURT:  Well, give me the 90 percent sure.
20  MR. MURPHY:  I know he was --
21  THE COURT:  Well, you can't argue that for the entire
22  time he did this, or he didn't do that, if you can't tell me
23  what that time was.
24  MR. MURPHY:  I'm sorry, Your Honor, I'm not trying to
25  offend the court.  And I don't have the court's answer.  I'm

1  also not trying to be evasive.  What I can tell you is that
2  for a period of time towards the end of the conspiracy he
3  seemed to be involved virtually every day.  For long periods
4  of time before that, he was working as an Uber driver.  And
5  the discovery that we read from other people were people
6  saying, well, she has other drivers, he's on the way out, he
7  seems to be doing something else.  It doesn't appear to have
8  been -- the discovery, at least, doesn't suggest he was
9  consistently involved in exactly the same way all the way
10 through.  And I know the court wants a start date, and I just
11 don't have it for Your Honor.
12   I do want to say that --
13       THE COURT:  Well, it appears at least by 2015 he was
14 involved in similar activities, with or without this
15 conspiracy, down in Pierce County; isn't that right?
16       MR. MURPHY:  When he arrived in the United States he
17 began living with his co-conspirator, yes, Your Honor.  And
18 it does appear that he was arrested in 2015.  And charges
19 were not brought on that case.  So that is fair.
20       THE COURT:  During the search of his person, they
21 located $3,500 in cash.  And he was arrested in connection
22 with a Backpage advertisement for a 19-year-old female who
23 was present with him when he was arrested.
24       MR. MURPHY:  Yes, Your Honor, it absolutely does
25 appear --

1          THE COURT:  Sounds like, at least from 2015, he was
2     involved in this type of activity.
3          MR. MURPHY:  Yes.  That, of course, does not
4     distinguish him from the other defendants that the court has
5     sentenced.  But it's -- it is what it is.
6        What I would say to the court is during this whole time,
7     as I was saying, he had other jobs.  He was working as an
8     Uber driver.  He was working for a restaurant.  He had gotten
9     involved in Airbnb and trying to rent out a room to other
10    people.  This is not -- like his involvement in the
11    conspiracy, even at his most involved, was not like an
12    aspiration for him.  It was a way for -- it was a crime.
13    He's accepted responsibility for it.  I don't mean to
14    diminish it.
15       But I do want to make the court understand that unlike
16    some of the other defendants here, this is a gentleman who
17    was differently situated, vis-a-vis his options.  He didn't
18    have a job at Microsoft.  He wasn't consulting -- unlike
19    other defendants, he wasn't having sex with the prostitutes.
20    He didn't deliver condoms.  He picked up food -- or delivered
21    food and picked up cash.  Those are the supplies, as I
22    understand it.
23         THE COURT:  Well, just a moment.  Paragraph 15 of the
24    presentence report specifically says he rented apartments in
25    his name for use.  Additionally, he supplied -- delivered

1   supplies, including food, condoms, baby wipes, to the female
2   prostitutes working at the brothels.  Are you suggesting that
3   didn't happen?
4          MR. MURPHY:  I missed it.  I looked at this case
5   carefully.  I remember him delivering lots of supplies.  I
6   didn't remember seeing condoms.  But if it's in the
7   presentence report, and we haven't objected to it --
8          THE COURT:  All right.  What's your recommendation?
9          MR. MURPHY:  Your Honor, let me briefly make two more
10  points.  I'm sorry, I can tell I'm trying the court's
11  patience.  Two points.  First, it's true that he didn't
12  cooperate like some of the other offenders.  But there were
13  conversations along those lines.  And his immigration status
14  made it very difficult for him to resolve the case in a way
15  that wasn't true for the United States citizen defendants in
16  this case.
17      And the reason that we have recommended a sentence of
18  364 days as opposed to a recommendation 365 days, or
19  12 months, is that a sentence at 364 days, which actually
20  results in more time than the year-and-a-day recommendation
21  the probation officer has proposed, gives Mr. He some
22  possibility of being released on bond if he's ever placed
23  into immigration proceedings, which I think is expected.
24      Mr. Cantor learned today that the immigration proceedings
25  will be adding an allegation of removability, based on this

1  conviction.  Proceedings can last for years, as the court
2  knows.  And even if he's deported, China can be recalcitrant
3  in providing travel documents.  If he gets a sentence of
4  364 days or less, he would be in a position to be eligible
5  for some sort of bond.  Otherwise he would be required to
6  serve the years into the future, subject to mandatory
7  detention.
8      This was a circumstance that, again, made him different,
9  his minor role, his different personal circumstances.  It's
10 not that he was unwilling to cooperate, it was just that we
11 had a difficult time resolving the case.  We worked hard to
12 do that with the government.  I've tried to honor that
13 agreement with the government, today, with our
14 recommendation.  And I would urge the court to impose the
15 joint recommendation of the parties.
16         THE COURT:  Thank you.  Does your client wish to be
17 heard?
18         MR. MURPHY:  He does, Your Honor.  Thank you.
19         THE COURT:  Good afternoon, sir.
20         THE DEFENDANT:  Good afternoon, Your Honor.  I'm so
21 sorry to everyone, and my father, mother.  But the special
22 one is my wife and my three kids.
23     I'm finished.
24         THE COURT:  Well, first, I note that the defendant
25 has pled guilty to use of a communication facility to promote

1  prostitution.  That was a downward charge.  He originally was
2  charged with conspiracy in connection with a
3  three-or-four-year prostitution ring that operated in this
4  community.  The government has already given this defendant a
5  huge break by letting him plead to essentially a lesser
6  crime, that is using a telephone, which has a maximum of, I
7  think, five years, rather than a conspiracy that would be
8  much greater.  This defendant was involved in the
9  prostitution ring.
10         MR. MURPHY:  I'm sorry to interrupt the court, but --
11         MS. CRISHAM:  This was the charge that the
12  defendant --
13         THE COURT:  This was the original charge?
14         MS. CRISHAM:  Yes, it was.
15         THE COURT:  Okay.  Pardon me.
16     It's still troubling, because the defendant, the best I
17  can tell, was doing essentially what others were doing, that
18  I've already sentenced, who pled guilty to conspiracy, the
19  overall conspiracy.  This defendant assisted that conspiracy
20  by renting apartments, by delivering supplies, including
21  condoms and other supplies to the female prostitutes.
22     It's troubling to the court that this defendant in 2015,
23  was arrested on October 6th of 2015 in Pierce County.  Now, I
24  don't know whether that was involved in this -- this ring
25  that we're dealing with in this case or something else.  But

1  it is undisputed that he had put up an advertisement on
2  Backpage.com, that he showed up at that location on that date
3  for a $300 date that the woman was going to have with the
4  man.
5      The man turned out to be an undercover detective.  And
6  during the search, when he is arrested, he's got $3,500 in
7  cash.  The court can only assume that, from at least 2015
8  until the time he was arrested in this case, that he was
9  involved in this type of activity.
10     Now, the defendant in this case did not cooperate.  He has
11 been given a minor role.  And when we get the guidelines,
12 which of course are not binding upon me, it's 12 to
13 18 months.  And, frankly, I see no reason not to impose the
14 bottom of the guideline range, which is 12 months.  The
15 defendant is here in this country on the status he's in.  And
16 he's going to have to take the consequences of violating our
17 laws.
18     So I'm not inclined to give him 12 months and a day.  I'm
19 inclined and will give him 12 months, bottom of the guideline
20 range, followed by supervised release of one year subject to
21 each of the standard conditions and each of the special
22 conditions that are set forth in the sentencing
23 recommendations.
24     I find the defendant does not have the ability to pay a
25 fine.  I'll waive the fine, assess the $100, and advise the

1  defendant that to the extent he has not waived his right to
2  appeal in the plea agreement, any appeal must be filed within
3  14 days of the time I sign the judgment.
4          MR. MURPHY:  Your Honor, forgive me, but would the
5  court consider reducing his sentence by one day?  He would
6  not get good time.  He would not get the benefits of a year
7  and a day.
8          THE COURT:  Counsel, you've made your arguments.
9  I've understood them.
10         MR. MURPHY:  It would help Mr. He potentially going
11 forward.
12         THE COURT:  He should have thought of that when he
13 got into this and stayed in this activity as long as he did.
14 And he should have had a wake-up call back in 2015.  I would
15 have thought that when he was arrested he would have been a
16 little smarter about how he proceeded.  I'm not going to give
17 him a year and a day so he can be on bond, or other -- have
18 some special circumstance.
19         MR. MURPHY:  I'm not asking for a year and a day, I'm
20 asking the court for 364 days, which is one day less than a
21 year.
22         THE COURT:  I'm not going to do that either.  One
23 year.  Twelve months.  Any objection to the form of the
24 judgment?
25         MR. MURPHY:  No, Your Honor.

| | |
|---|---|
| 1 | THE COURT:  All right.  Do you want bring it up, |
| 2 | please? |
| 3 | MR. MURPHY:  Yes. |
| 4 | THE COURT:  The government is having a lot of trouble |
| 5 | with these judgments.  I know we have to fix Mr. Thompson's |
| 6 | at some point.  But this one says, on the face, that he |
| 7 | pleaded guilty to Count 1 of the superseding information. |
| 8 | Was there a superseding information? |
| 9 | MS. CRISHAM:  Yes, Your Honor, there was a |
| 10 | superseding information that we have, that we are dismissing |
| 11 | Counts 1 through 9 of the superseding indictment. |
| 12 | THE COURT:  So he was charged with conspiracy. |
| 13 | MS. CRISHAM:  He was originally charged in the |
| 14 | complaint, which was the original charging document. |
| 15 | THE COURT:  I thought you said earlier that he had -- |
| 16 | the only thing he had been charged with was this telephone |
| 17 | count. |
| 18 | MS. CRISHAM:  No, Your Honor, he was originally |
| 19 | charged with the telephone count.  At the day of takedown, |
| 20 | that's what the complaint charged him with. |
| 21 | THE COURT:  Then he was charged with the conspiracy |
| 22 | in its entirety, right? |
| 23 | MS. CRISHAM:  It was a Conspiracy Travel Act count, |
| 24 | what he was charged with in the complaint.  We then charged |
| 25 | additional conspiracy and additional charges. |

```
 1              THE COURT:  So the superseding indictment, why do we
 2   need -- it says Counts 1 through 9 are dismissed.  Doesn't
 3   the superseding information do away with all of this previous
 4   indictment or superseding indictment?
 5              MS. CRISHAM:  I don't believe so, that's why we had
 6   to redo Mr. Thompson's, because it was missing that.
 7              THE COURT:  Well, that's not the only reason.
 8              MR. MURPHY:  To be clear, for the record, there was
 9   never an information.  I believe he just pled to Count 1 of
10   the indictment.
11              THE COURT:  So you don't really know what he pled
12   guilty to?  Where is the docket sheet?
13              MR. MURPHY:  Excuse me, Your Honor, you're right.
14              THE COURT:  You had an indictment.  We had a
15   superseding indictment.  And then we had a superseding
16   information; is that right?
17              MR. MURPHY:  Yes, Your Honor.
18              THE COURT:  It's the superseding information that he
19   pled to.
20              MS. CRISHAM:  That's correct, Your Honor.
21              MR. MURPHY:  Yes.
22              THE COURT:  And it's only one count?
23              MS. CRISHAM:  That's correct.
24              MR. MURPHY:  Right.
25              THE COURT:  I've signed the judgment.  It will be
```

1  filed.  Anything further to come before the court?
2          MS. CRISHAM:  No.  Thank you, Your Honor.
3          MR. MURPHY:  No.  Thank you.
4                       (Adjourned.)
5
6                    C E R T I F I C A T E
7
8
9      I certify that the foregoing is a correct transcript from
10  the record of proceedings in the above-entitled matter.
11
12
13
14  */s/ Debbie Zurn*
15  DEBBIE ZURN
    COURT REPORTER
16
17
18
19
20
21
22
23
24
25